**Jose Antonio CARRION Plaintiff**

v.

**Reginald A. WILKINSON,
et al. Defendants**

**No. 1:03 CV 107.**

United States District Court,
N.D. Ohio,
Eastern Division.

March 10, 2004.

Jose Antonio Carrion, Mansfield, OH, Pro se.

Scott M. Campbell, Office of the Attorney General, State of Ohio, Corrections Litigation Section, Columbus, OH, for Defendants.

*MEMORANDUM OF OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LIBERAL CONSTRUCTION, GRANTING DEFENDANTS' MOTION TO DISMISS, AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT*

WELLS, District Judge.

Plaintiff Jose Carrion, an inmate at the Richland Correctional Institution (the "Institution") in Mansfield, Ohio, filed this action *pro se* against the following officials of the State of Ohio: Reginald Wilkinson, Director of the Ohio Department of Rehabilitation and Correction; Brian Cain, a registered nurse and Health Care Administrator at the Institution; Joe Henderson, the Food Service Manager at the Institution; Kenneth Williams, the Institution's physician; S. Elswick, the Institution's dietary technician; and Sue Smith, the Standards and Accreditation Manager for the Office of Correctional Health Care in the Ohio Department of Rehabilitation and Correction. Among the defendants, Ms. Elswick and Ms. Smith have not been properly served.

Before the Court is defendants Wilkinson, Cain, Henderson, and Williams' motion to dismiss, to which plaintiff Jose Carrion did not respond. Instead, Mr. Carrion filed a motion for leave to file amended complaint and a motion for liberal construction. (Docket nos. 15, 19 & 23.) For the reasons that follow, plaintiff's motion for liberal construction will be granted, defendants' motion to dismiss will

be granted, and plaintiff's motion for leave to file amended complaint will be denied.

## I. COMPLAINT

Plaintiff, *pro se*, alleges the following in his Complaint:

Mr. Carrion is a prisoner at the Richland Correctional Institution ("the Institution") in Mansfield, Ohio. He was arrested on or about 25 April 2001 and was incarcerated at the Orient Road Jail Facility in Tampa, Florida. He informed the nurse there that he had "insulin dependent diabetes." On or about 12 September 2001, he started to experience a severe pain in his shoulders, arms, legs, and feet. Dr. Encarnation, the jail physician, diagnosed him with "neuropathy" and prescribed him "naprosyn," an "anti-inflammatory medication," and three insulin dependent diabetic diet meals.

On or about 4 April 2002, Mr. Carrion was transferred to the Richland Institution after several previous transfers. During an "inter-physical examination," he informed the shift nurse that he was an insulin dependent diabetic patient and that he suffered from "neuropathy."

On or about 10 July 2002, Mr. Carrion wrote a letter to defendant Brian Cain, the Institution's Health Care Administrator and a registered nurse. He requested the following information from Mr. Cain: (1) a list of the food that the physician (defendant Kenneth Williams, the Institution's physician) prohibited him from eating; and (2) names of all the medications he was taking and why he was taking them. (Compl.Ex. A.) Mr. Cain responded that he "should not eat anything from commissary! Minimal amounts of bread, rice, pasta & potatoes; and no real sugar/jelly/syrup!" Mr. Cain also wrote down the names of the medications Mr. Cain was taking and their intended effects. (Compl.Ex. A.)

Some of the food items on the Institution's menu contained "starch." On or about 22 July 2002, Mr. Carrion wrote a letter to defendant Joe Henderson, the Institution's Food Service Manager, requesting a diabetic diet meal. Mr. Henderson replied:

We offer diabetic exchanges on sugar, syrup and diabetic Koolaid. Fresh fruit can be exchanged for cake and pudding. Just ask for it. Your diet is a self-monitored diet so you can make choices on your diet. If you would like to come over and talk to me I would be happy to listen and offer some advise.

(Compl.Ex. C.)

On or about 14 October 2002, Mr. Carrion filed an informal complaint against Mr. Henderson and requested a diabetic diet. Mr. Henderson responded on 16 October 2002 to the complaint:

Line 2 & 4 are the diet lines to get your diabetic supplies & diabetic Koolaid. Exchanges are for desserts w/ fresh or canned fruits. There are no exchanges for pasta, potatoes or rice. Those items are selfmonitored. If you have problems with a coordinator about fruit exchange, please ask for a manager and get the name of a coordinator so I can do something about it. We have all the supplies that you need.

(Compl.Ex. D.)

On or about 23 October 2002, Mr. Carrion filed a Notification of Grievance with the Institution's Inspector against Dr. Williams, Mr. Cain and Mr. Henderson. He requested a diabetic diet conforming to the ADA dietary standard and substitutes for bread, pasta and potato. (Compl.Ex. E.) The following Disposition of Grievance was issued by the Inspector on 13 December 2002:

.     .     .     .     .

To investigate your grievance Mr. Cain was interviewed along with Mr. Ridenour, Food Service Supervisor.

Your Informal Complaint Response was also reviewed. During my investigation I found that you saw the diet tech on July 2, 2002, in which she counseled you on the diabetic self-monitoring diet. You are also being seen regularly in the diabetic chronic care clinic, your last visit was November 19, 2002 and your diet was reviewed again at that time. The medical department has rescheduled you to speak with the diet technician. I also reviewed your commissary purchases during the last six months. You have been purchasing Jones Nacho's, shelled peanuts, Jones Cheese Puffs, Jones Party Mix, cinnamon bagels, mackerel, ramen noodles and mega honey buns. As for [sic] as the meals themselves, Mr. Henderson advised you of the diabetic Kool–Aid and fruit that are supplied, along with the snack bag given to inmates every night. . . .

The Inspector's office will take no further action at this time.

(Compl.Ex. F.)

On 25 November 2002, Mr. Carrion filed an informal complaint against Dr. Williams and Mr. Cain, claiming that their failure to arrange "insulin dependent diabetic meals" for him denied him proper medical care. Mr. Cain answered the complaint as follows:

There is no such diet as diabetic meals. This is a self-monitoring diet. You were counseled & educated on the proper foods by a diet tech on 7–2–02. You've been seen & educated on chronic case clinics. Last visit was 11–19–02. In the last 8 months you have gained 23 lbs. This is contributing to your problem with neuropathy.

(Compl.Ex. G.)

On 12 December 2002[1], Mr. Carrion appealed the Inspector's decision to the Chief Inspector. (Compl.Ex. I.) The Chief Inspector affirmed the Inspector's decision and referred Mr. Carrion's complaint to the Office of Correctional Healthcare for further review and response. (Compl.Ex. J.)

On 12 December 2002, Mr. Carrion also filed an Inmate Reasonable Accommodation Request with the American with Disabilities Act Coordinator for inmates. He requested "proper insulin dependent diabetic meals." (Compl.Ex. K.) In a letter dated 31 December 2002, defendant Sue Smith, Standards and Accreditation Manager for the Office of Correctional Health Care in the Ohio Department of Rehabilitation and Correction, responded to Mr. Carrion's request and repeated the Institution's position. (Compl.Ex. L.)

Mr. Carrion claims that defendants' refusal to provide him with the "insulin dependent diabetic meals" caused his diabetics and neuropathy conditions to deteriorate. He brought this case under 42 U.S.C. § 1983, the Americans with Disabilities Act of 1990 ("ADA"), and the Rehabilitation Act of 1973 ("RA"). He requests compensatory damages, punitive damages, and injunctive relief. The defendants are sued in their official and individual capacities.

## II. MOTION TO DISMISS

Defendants Wilkinson, Cain, Williams, and Henderson move to dismiss the complaint. They raise the following arguments: (1) Mr. Carrion has failed to exhaust his administrative remedies as required under 42 U.S.C. § 1997e(a); (2) Mr. Carrion has failed to allege any personal involvement of Director Wilkinson, therefore the § 1983 suit against Di-

---

1. This is the date entered on Mr. Carrion's appeal form. It may be mistaken, since the Inspector's disposition of Grievance, which Mr. Carrion appealed, is dated 13 December 2002.

rector Wilkinson should be dismissed; (3) Mr. Carrion's claim against Mr. Cain is based solely on Mr. Cain's responses to Mr. Carrion's complaint, which responses do not violate Mr. Carrion's right to due process; (4) the complaint fails to state an Eighth Amendment violation; (5) Mr. Carrion fails to state a claim under the ADA or the RA; (6) Defendants are immune from monetary damages under the Eleventh Amendment; and (7) Defendants are entitled to qualified immunity against plaintiff's claim for monetary damages.

When considering a 12(b)(6) motion for failure to state a claim upon which relief can be granted, a court must:

> construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief.... However, the Court need not accept as true legal conclusions or unwarranted factual inferences.

*Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir.1998). The Court's task is thus "necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

### Section 1983   Claim

Mr. Carrion claims that the named defendants violated his right to medical care under the Eighth Amendment of the United States Constitution. He brings this claim against the defendants in their official and individual capacities.

*A. Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), requires the exhaustion of all available state administrative remedies by the prisoner before a federal court may hear and decide his § 1983 action. *Brown v. Toombs*, 139 F.3d 1102, 1103 (6th Cir.1998). The Sixth Circuit requires that "prisoners filing § 1983 cases involving prison conditions must allege and show that they have exhausted all available state administrative remedies." *Id.* at 1104.

Under the Ohio Administrative Code § 5120–9–31, the following three-step grievance procedure is available for an inmate complaining about "policies, procedures, conditions of confinement, or the actions of institutional staff:" (1) file an informal complaint to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint; (2) file a notification of grievance to the inspector of institutional service; and (3) file an appeal of the disposition of grievance to the office of the chief inspector. Ohio Admin. Code § 5120–9–31(J) (2003).

Mr. Carrion has submitted records to show that he filed an informal complaint regarding the denial of a diabetic diet on 14 October 2002, to which Mr. Anderson responded on 16 October 2002. On 23 October 2002, Mr. Carrion filed a notification of grievance. The Institution's Inspector issued a Disposition of Grievance on 13 December 2002, which Mr. Carrion appealed to the Office of Chief Inspector and received a decision from that Office on 17 December 2002. Therefore, Mr. Carrion exhausted his administrative remedies on the complaint he filed on 14 October 2002.

■ Mr. Carrion also filed an informal complaint against Dr. Williams and Mr. Cain on 25 November 2002. He did not allege or submit evidence in his Complaint

to show that he had followed through the 25 November 2002 informal complaint by filing a grievance or an appeal. A prisoner must exhaust his administrative remedies on every claim in his complaint and the failure to exhaust on one claim will result in dismissal of the entire case even if the prisoner has exhausted on the other claims. *Julian–Bey v. Crowley,* 24 Fed. Appx. 393, 395 (6th Cir.2001). The 25 November 2002 informal complaint, however, was similar to the 14 October 2002 complaint, both of which requested a diabetic diet meal. The Inspector's disposition of grievance and the Office of Chief Inspector's decision were issued after Mr. Carrion filed his 25 November 2002 informal complaint. Both decisions addressed the alleged denial of a diabetic diet to Mr. Carrion. Because Mr. Carrion's 25 November 2002 informal complaint does not raise a claim different from his 14 October 2002 informal complaint, upon which his § 1983 claim based, he does not fail to exhaust on his § 1983 claim based on alleged denial of a diabetic diet.

■ Defendants argue that Mr. Carrion failed to exhaust his administrative remedies on his claim that defendant Wilkinson failed to implement or promulgate the proper rules and regulations regarding the diabetic diet for prisoners with diabetes, which claim he did not raise with the Institution in his grievances. A § 1983 claim has two elements: (1) the action occurred "under color of law" and (2) the action is a deprivation of a constitutional right or a federal statutory right. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In interpreting § 1983, the Supreme Court held that a local government entity can be found liable under § 1983 only where the harm was caused by an unconstitutional policy statement, ordinance, regulation, or decision officially adopted and promulgated by the entity's officers, or custom. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690, 98

S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See also Berry v. City of Detroit,* 25 F.3d 1342, 1345 (6th Cir.1994). Furthermore, a state official may be sued under § 1983 in his official capacity or individual capacity. Naming a government official in his official capacity is the equivalent of naming the government entity itself as the defendant, and requires the plaintiff to make out *Monell*-type proof of an official policy or custom as the cause of the constitutional violation. *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985), *Kentucky v. Graham,* 473 U.S. 159, 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Therefore, to bring an action against defendant Wilkinson in his official capacity, Mr. Carrion must allege that an official policy or custom caused his injury.

■ Defendants argue that because Mr. Carrion failed to complain about the official policy in his grievances, he has failed to exhaust his administrative remedies on his § 1983 claim. When filing a grievance before an administrative agency, an inmate cannot be expected nor required to formulate a legal theory in his grievance as if he was filing a complaint before a court. Neither is he required to use the precise language adopted by the courts. Mr. Carrion stated in his Notification of Grievance that "this Institution does not conform to the ADA dietary standarts [sic] and the nutrition provided to this diabetic inmate is not recomended [sic] b the ADA dietary administration." (Compl.Ex. E.) This statement can be read as raising the issue of the Institution's policy or custom on diabetic inmates' diet, which is sufficient for the purpose of exhausting administrative remedies.

*B. Claims Against Defendants in Their Individual Capacities*

1. Claims against Director Wilkinson

■ To state a claim against a defendant in his individual capacity, plaintiff

must allege personal involvement of the defendant in causing plaintiff's injury. *Hardin v. Straub*, 954 F.2d 1193, 1196 (6th Cir.1992). Mr. Carrion does not allege any personal involvement of Director Wilkinson in denying his request for a diabetic diet. Instead, he alleges that Director Wilkinson "has implemented or promulgated rules and policies" that caused him harm. This is a claim against Director Wilkinson in his official capacity. Mr. Carrion has not stated a claim against Director Wilkinson in his individual capacity. Therefore, the § 1983 claim against defendant Wilkinson in his individual capacity will be dismissed.

### 2. Claims against defendants Henderson, Cain, and Williams

■ Under the Eighth Amendment's proscription on cruel and unusual punishment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). That right is violated when prison doctors or officials are deliberately indifferent to the prisoners' serious medical needs. *Id.See also Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir.2001). This test has two components, one objective and one subjective. To satisfy the objective component, Mr. Carrion must allege that his medical need at issue is "sufficiently serious." To satisfy the subjective component, Mr. Carrion must allege facts which, if true, would show that the officials subjectively perceived facts from which to infer substantial risk to Mr. Carrion, that they did in fact draw the inference, and that they then disregarded that risk. *Id.*, at 702–03, citing *Farmer v. Brennan*, 511 U.S. 825, 834, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Mr. Carrion alleges that he is an insulin dependent diabetes patient, that his medical needs to have a "diabetic diet" were sufficient, and that defendants were deliberately indifferent to his medical needs.

Courts have recognized that a diabetic inmate's needs to control his diet are sufficient medical needs for purposes of the Eighth Amendment analysis. *Woulard v. Food Service, Lt. P.*, 294 F.Supp.2d 596, 603–04 (D.Del.2003); *McCabe v. Aramark Food Services*, No. 01 C 5429, 2002 WL 27661, at *2 (N.D.Ill. Jan. 10, 2002). Mr. Carrion has also alleged facts to show that defendants knew about his diabetic condition and the risk he was facing. The issue is whether the facts, as alleged in the Complaint, show that defendants recklessly disregarded the risks to Mr. Carrion.

■ Accepting all the Complaint's factual allegations as true, and construing the Complaint in the light most favorable to Mr. Carrion, the Court determines that Mr. Carrion cannot show that defendants were deliberately indifferent to his medical needs. The "deliberate indifference" requirement is "meant to prevent the constitutionalization of medical malpractice claims." *Comstock*, 273 F.3d at 703. As stated by the Supreme Court, "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 105–06, 97 S.Ct. 285. Furthermore, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock*, 273 F.3d at 703. Deliberate indifference "is the equivalent of recklessly disregarding the risk." *Farmer*, 511 U.S. at 836, 114 S.Ct. 1970. It is such indifference that "offend[s] 'evolving standards of decency.'" *Estelle*, 429 U.S. at 106, 97 S.Ct. 285.

None of the defendants' actions, as alleged in the Complaint, rose to the level of

"offend[ing] 'evolving standards of decency.'" *Id.* Mr. Henderson promptly responded to Mr. Carrion's letter dated 22 July 2002 and informal complaint dated 14 October 2002. He explained to Mr. Carrion that Mr. Carrion's diabetic diet was "a self-monitored diet," which meant that Mr. Carrion had to "make choices on [his] diet." Mr. Henderson informed Mr. Carrion that diabetic exchanges on sugar, syrup, cake, pudding and desserts were available, that Lines 2 & 4 were "the diet line to get [his] diabetic supplies and diabetic Kool-aid," and that there were no exchanges for pasta, potatoes or rice. Mr. Henderson offered to talk to Mr. Carrion about his diet and told Mr. Carrion that if he had problems with a coordinator about fruit exchange, he should get the name of the coordinator so that Mr. Henderson could deal with the problems. These acts of Mr. Henderson do not show or tend to show that he recklessly disregarded the risk faced by Mr. Carrion.

Nor do Dr. Williams' and Registered Nurse Cain's acts, as alleged in the Complaint, show or tend to show that they recklessly disregarded the risk faced by Mr. Carrion. Dr. Williams prescribed insulin and other medications for Mr. Carrion's diabetes and counseled him on his diet. Mr. Carrion was further counseled and educated on his diet by a diet technician. Mr. Cain promptly responded each time to Mr. Carrion's letter and informal complaint, informing Mr. Carrion on his diet. Based on these alleged facts, Mr. Carrion cannot show that Dr. Williams or Mr. Cain were deliberately indifferent to his medical needs.

Therefore, Mr. Carrion's § 1983 claims against defendants Williams, Cain, and Henderson in their individual capacities for alleged Eighth Amendment violation will be dismissed.

### C. Claims Against Defendants in Their Official Capacities

Suing a government official in his official capacity is the equivalent of naming the government entity itself as the defendant. The Ohio Department of Rehabilitation and Correction is the government entity involved here. However, the department is not an independent entity, but a unit of the State of Ohio. Therefore, the plaintiff's claims should be treated as if they were against the State of Ohio. *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Papp v. Snyder,* 81 F.Supp.2d 852, 857 n. 4 (N.D.Ohio 2000). The State of Ohio has received notice of the lawsuit because the Office of the Attorney General for the State of Ohio is representing the defendants in this case.

To state a § 1983 claim against a government entity, a plaintiff must allege that his injury was caused by an unconstitutional policy statement, ordinance, regulation, or decision officially adopted and promulgated by the entity's officers. *Monell,* 436 U.S. at 690, 98 S.Ct. 2018. Even though Mr. Carrion has alleged that the state officials implemented or promulgated rules and policies that deprived him of a proper diabetic diet, the facts stated in the Complaint do not support such a conclusion. *Grindstaff,* 133 F.3d at 421 ("the Court need not accept as true legal conclusions or unwarranted factual inferences."). The Complaint stated that Mr. Carrion was prescribed a self-monitored diabetic diet, that he himself was responsible for choosing the proper food, that he was counseled and educated on his diet, that substitutes for certain foods for a diabetic inmate were available, and that certain lines for diabetic diet were available. These facts do not show an official policy of depriving a diabetic inmate's proper diet. Mr. Carrion's § 1983 claims against

defendants in their official capacities will be dismissed.

Defendants further argue that the suit against defendants in their official capacities for monetary damages is barred by the Eleventh Amendment of the Constitution and that the individual defendants are entitled to qualified immunity on Mr. Carrion's claims against them for monetary damages. Because this Court has decided that Mr. Carrion has failed to state § 1983 claims against the defendants, it is no longer necessary to address the immunity issues.

### ADA AND RA CLAIMS

Mr. Carrion also brought a claim under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 and the Rehabilitation Act, 29 U.S.C. § 794. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Rehabilitation Act prohibits excluding a disabled person from a program that receives federal financial assistance solely by reason of his or her disability. 29 U.S.C. § 794.

■ Mr. Carrion has failed to allege that the defendants denied him the benefits of any services, programs, or activities provided for other non-disabled inmates, or that they subjected him to discrimination because of his diabetes. Instead, he claims that he was denied a diabetic diet. "The ADA and Rehabilitation Act afford disabled persons legal rights regarding access to programs and activities enjoyed by all, but do not provide them with a general federal cause of action for challenging the medical treatment of their underlying disabilities." *Galvin v. Cook*, No. CV 00–29–ST, 2000 WL 1520231, at *6 (D.Or. Oct. 3, 2000) (rejecting a diabetic inmate's ADA

claim) (citing *Grzan v. Charter Hosp. of Northwest Indiana*, 104 F.3d 116, 121–22 (7th Cir.1997)). Mr. Carrion's claim that he was denied medical treatment, in this case, a proper diet, is "not the type[ ] of claim[ ] that the ADA and the Rehabilitation Act were intended to cover." *Id.* at *7. Mr. Carrion's ADA and RA claim will be dismissed.

### III. PLAINTIFF'S MOTIONS

■ Mr. Carrion has filed a motion for leave to file amended complaint and a motion for liberal construction, to which both defendants have filed objections. *Pro se* pleadings are liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Therefore, Mr. Carrion's motion for liberal construction will be granted.

In his motion for leave to file amended complaint, Mr. Carrion seeks to add the Ohio Department of Rehabilitation and Correction as a defendant in the case. As explained in Section II, Mr. Carrion's § 1983 claims against the individual defendants in their official capacities are the equivalent of claims against the Ohio Department of Rehabilitation and Correction and the State of Ohio. Therefore, there is no need for Mr. Carrion to add the Ohio Department of Rehabilitation and Correction as a named defendant for his § 1983 claim. Furthermore, as the Court has analyzed in Section II, Mr. Carrion has failed to state an ADA or RA claim against the officials of the Ohio Department of Rehabilitation and Correction. The same rationale applies to an ADA or RA claim against the Department itself. For these reasons, Mr. Carrion's motion for leave to file amended complaint will be denied.

## IV. CONCLUSION

For the reasons stated, Mr. Carrion's motion for liberal construction is granted; Mr. Carrion's motion for leave to file amended complaint is denied; and defendants' motion to dismiss is granted. Mr. Carrion's § 1983 claims against defendants the State of Ohio, Director Wilkinson, Dr. Williams, Mr. Cain, and Mr. Henderson are dismissed. Mr. Carrion's ADA and Rehabilitation Act claims against these defendants are dismissed.

Mr. Carrion has not properly served defendants S. Elswick and Sue Smith. In any event, Mr. Carrion has not alleged any facts regarding S. Elswick other than naming her as one of the defendants. His claim against Sue Smith rests entirely upon Ms. Smith's response to his ADA and RA grievance, and this Court has stated that Mr. Carrion does not have an ADA or RA claim. Therefore, defendants Elswick and Smith are dismissed from this action.

IT IS SO ORDERED.

### ORDER OF DISMISSAL

This Court, having previously entered its Memorandum of Opinion and Order Granting Plaintiff's Motion For Liberal Construction, Granting Defendants' Motion to Dismiss, and Denying Plaintiff's Motion For Leave to File Amended Complaint, hereby dismisses this case with prejudice.

IT IS SO ORDERED.